Victor FRANKFURT et al., Appellants,

v.

TEXAS TURNPIKE AUTHORITY, Appellee.

No. 7001.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 18, 1958.

Rehearing Denied March 18, 1958.

Eades & Eades, Dallas, for appellants.

Locke, Locke & Purnell, J. L. Shook, Jess Hay, Wayne O. Woodruff, Dallas, for appellee.

CHADICK, Chief Justice.

This is a condemnation case and the judgment of the trial court is affirmed.

Appellee, Texas Turnpike Authority, condemned a strip of land off the rear of appellants' property to be used in the construction and operation of the Dallas-Fort Worth Turnpike project. Two different estates are involved in the land and improvements condemned. Appellants Victor Frankfurt and wife and Sol Minzer and wife are the owners of the fee estate and appellant W. B. Johnson is the owner of leasehold interest in the property upon which a tourist court and cafe business known as "The Last Frontier" is operated. The lease agreement contained no provision fixing rights of the parties in event of condemnation and its unexpired term was 35 months from the date of taking.

After appeal from the Commissioners' award wherein the interest of each estate was apportioned, the court below rendered judgment upon a jury verdict condemning the strip of land and awarding appellants damages for their respective interests in each estate. The award of the jury exceeded the valuations testified to by appellee's expert witnesses, but was less than the valuation testified to by appellants' witnesses. No issues were raised except as to the amount of compensation and damages due the owners of the two estates.

Appellants' first point is concerned with the trial court's excluding from the jury's consideration the testimony of the expert witness DeWitt Knapp regarding the market value of the remaining property after the taking. Point 2 is directed at the court's failure to rescind its ruling in this regard on appellants' motion. The witness Knapp testified that in making his appraisals he used the "cost approach," the "fair return for investment approach," and the "market comparison approach."

The Turnpike Authority's brief in commenting on this witness' testimony says, "Knapp's opinion as to values in this case

was founded upon a number of sound reasons and appraisal approaches until he valued the remainder of the subject property, whereupon he scuttled the various methods formerly employed and based his valuation testimony solely upon the loss of anticipated gross income or profits for the next 20 years."

This witness after testifying rather extensively was interrogated as to the value of the remainder of the subject property. His relevant testimony is reproduced as follows:

"Q. All right, now, have you applied any other depreciation to the property after condemnation? A. Yes, sir. I estimated that there was economic obsolescence on it or economic loss of value to the property.

"Q. All right, and what did you determine was the economic loss in the value? A. $55,860.00.

"Q. Can you tell me how you reached that figure? A. Yes, sir. I capitalized at seven and one-half per cent for 20 years the rental loss of $450.00 per month.

\* \* \* \* \* \*

"Q. Where do you get—what do you base your $55,860 functional depreciation on then? A. I base that upon the loss in value, because of the taking of the Turnpike and the fact that there will be loss in the gross income attributable to the property.

"Q. Is that the basis for your cost approach, your cost appraisal of the property before and after? A. For that part of the depreciation."

In addition to this testimony the witness testified that he fixed the value of the property as he had testified out of his experience as a real estate man and appraiser and that he took into consideration the cost approach, the income approach and the market approach in arriving at his final conclusions as to such values. There is no question but that he had qualified himself as an expert witness whose testimony as to values was admissible. The testimony concerning the value of the subject property remaining was excluded on the motion of counsel for the Turnpike Authority as follows: "All of the testimony of Mr. DeWitt Knapp relating to the value of the property remaining after the taking immediately after the taking by the Texas Turnpike Authority for the reason that such appraisal is based entirely upon the loss of anticipated speculative and conjectural profits or revenues or rentals from the property over the next 20 years, same being an improper measure of damages and the same being an element which is not compensable under the laws of the State of Texas." The jury was instructed not to consider it. Appellants' motion to rescind such ruling was denied.

■ Several cases by the Texas courts have established the rule that any one familiar with the values in question may testify, leaving the sufficiency of the knowledge to the discretion of the trial judge in each case. 2 McCormick & Ray, Texas Law of Evidence, p. 258, Sec. 1422; Central State Bank of Coleman v. Henderson, Tex. Civ.App., 286 S.W. 518, wr. dism.; Premier Petroleum Co. v. Box, Tex.Civ.App., 255 S.W.2d 298, wr.ref., n.r.e.; Housing Authority of City of Galveston v. Henderson, Tex.Civ.App., 267 S.W.2d 843, no writ hist. The judge is given wide latitude in the exercise of his discretion. In this case the judge in the exercise of his judicial discretion apparently determined from the testimony that the value given by the witness was based solely upon his approach in which he capitalized at 7½% for 20 years his estimated rental loss on the property.

■ While no Texas case is cited, it is the prevailing view in nearly all jurisdictions that this speculative, remote and uncertain loss of rentals cannot be considered

as a basis for computing or ascertaining the market value of real property. Gauley & Eastern R. Co. v. Conley, 84 W.Va. 489, 100 S.E. 290, 7 A.L.R. 163. The Supreme Court (Commission of Appeals, Sec. B) in the case of Rowland v. City of Tyler, 5 S. W.2d 756, 760, a tax evaluation case rather than a condemnation, stated:

" * * * To use any one particular element as the sole standard by which to fix the value of all property is fundamentally wrong, and, in the very nature of things, prevents the ascertainment of the value contemplated by the Constitution. In many instances, the amount of rentals would be wholly misleading as applied to value, and a value fixed solely by such a method would not approximate the real value. Longtime rental contracts may be made in boom times or in times of depression, and if the amount of rental under such contracts were made the sole and determinative factor in fixing the value of the property covered thereby, the valuation arrived at by such plan would not represent a fair value either to the city or to the taxpayer. Again, many rental contracts are excessive because of bad business judgment on the part of the lessee, and for this reason could not properly be used as the decisive and controlling factor in fixing the values."

Recognizing the latitude given the judge in passing upon the admission of testimony, his action can not be held reversible error in this instance. State v. Parkey, Tex.Civ. App., 295 S.W.2d 457, wr.ref., n.r.e.; Gulf, C. & S. Ry. Co. v. Ryon, Tex.Civ.App., 72 S.W. 72, no writ hist.; Tyler S. E. Ry. Co. v. Hitchins, 26 Tex.Civ.App. 400, 63 S.W. 1069, no wr. hist. Appellants' Points 1 and 2 are overruled. Though this instance is thought not to show reversible error, it is suggested that justice might more nearly be done if the trial judge controlled such testimony by directions to the witness or by limiting consideration of the jury to the admissible portion of the testimony.

Appellants' third point alleges error of the trial court in refusing to permit cross-examination of an adverse expert witness on sales of other property in the neighborhood if the witness made the naked statement that property was not comparable. This point is respectfully overruled. Examination of the record does not disclose that appellant was denied cross-examination of a witness on any material fact.

Appellants' Points 4 and 5 relate exclusively to the W. B. Johnson leasehold interest and have no bearing on the merits of the appeal of Victor Frankfurt and Sol Minzer and their wives. Point 4 complains of the alleged error of the trial court in excluding testimony of expert witnesses as to the market value of a leasehold estate in the remainder of the property immediately before and after condemnation without regard to contract rental expressed in the lease. Point 5 complains of the trial court's failure to give a proper definition of the leasehold interest of W. B. Johnson and in refusing to submit appellant Johnson's requested charge thereon.

Two witnesses testified that the reasonable rental value of the property exceeded the contract rental of $2,000 per month by as much as $500 per month. W. B. Johnson himself testified he was paying too much rent in 1954, and had decided he had made a bad lease and requested his landlords to reduce his rent prior to condemnation. The Turnpike Authority's three valuation witnesses testified that the rental reserved in the lease was equal to or in excess of the reasonable market rental value of the premises covered by the leases. Thus there is a conflict in the evidence on this issue. For the purpose of these two points appellant Johnson assumes it to be proven that he was leasing the property at a higher monthly rental than its fair market value. In this respect, from his standpoint as a tenant, the lease is not beneficial and it would be to his interest if it terminated. However, the lease makes no provision for termina-

tion under these circumstances nor for diminution in rentals after the taking by the Turnpike Authority; Johnson is obligated to pay the entire rental of $2,000 per month. Appellant Johnson therefore argues that as a tenant he is losing money because of his unfavorable lease and the condemnor by taking a part of his leased premises, thereby causes him to lose even more money. In his brief Johnson seems to concede the general rule that in condemnation proceedings in Texas the measure of damages in all cases, regardless of the interest in the property being condemned is measured by the reasonable cash market value of the property taken. And where only partial taking is involved, damage to the remaining property is measured by the depreciation if any, in the reasonable cash market value of the property remaining after the taking. He contends, however, that the rule is or should be modified because of the peculiar circumstances arising out of the partial taking of property subject to a non-beneficial lease. In such case, if the measure of damages be the value of the leasehold taken, and the leasehold is by reason of an excessive rent reservation a liability and of no value but on the contrary a detriment to the tenant, then the effect of the operation of the rule would be that nothing of value is taken. He strongly contends that under the testimony admitted in evidence, the instructions given, and the issues submitted to the jury, he is prevented from recovering for the loss occasioned by the condemnation. He refers the court to 18 Am.Jur., p. 398, Sec. 296, where in part it is said:

"* * * but the market value of a lease subject to the payment of rent is an unsatisfactory test of the value, to a tenant, of a leasehold interest. It is often no test at all, because a lease rarely has any market value. The right of which a tenant is deprived and for which he is entitled to full compensation is the right to remain in undisturbed possession to the end of the term; and the loss resulting from a

deprivation of this right is what he is entitled to recover." Citing United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311, 156 A.L.R. 390.

The rule seems to be well settled in Texas that the payment of rentals is a factor which must be considered in arriving at the fair market value of a lease. See Reeves v. City of Dallas, Tex.Civ.App., 195 S.W.2d 575, wr. ref., n. r. e.; Nichols on Eminent Domain, Sec. 12.42(3); State v. Parkey, supra. Business judgment and self-interest would dictate that a voluntary buyer be concerned with the seller's obligation to pay rentals together with all the other terms and conditions of a lease contract. In Brazos River Conservation & Reclamation Dist. v. Adkisson, Tex.Civ. App., 173 S.W.2d 294, 301, wr. ref., it is stated:

"Under the authorities we do not believe that the rules of law applicable to the condemnation of * * * a leasehold estate differ in principle from the rules applicable to the condemnation of a fee or interest owned by the lessor."

This appellant did not request the court to submit to the jury issues as to the value of his leasehold estate before and after taking. He requested the usual issues in such cases which are outlined in State v. Carpenter, Tex.Com.App., 126 Tex. 604, 89 S.W.2d 194, 196, requiring the jury to determine (1) the value of the leasehold estate in the part taken; (2) the value of the leasehold estate in the part remaining immediately before the taking; and (3) the value of the leasehold estate in the part remaining immediately after the taking.

Appellant Johnson also requested the following definition be given in charge by the court:

"By the term 'leasehold estate of Defendant W. B. Johnson,' as used in this charge, is meant the right of De-

fendant Johnson, to the use and occupancy of the land under the lease held by Mr. Johnson as Lessee with the Defendants Victor Frankfurt and Sol Minzer and Lessors for the remainder of the primary lease term and subject to the provisions of said lease *without regard to the contract rental* expressed in said lease contract."

and the court declined to so instruct the jury but did give in charge an instruction modeled after an instruction approved in State v. Parkey, supra, as follows:

"By the term, 'leasehold interest of the Defendant, Johnson,' as used in this charge is meant the right of the Defendant, Johnson, to the use and occupancy of the land described in the lease with the Defendants, Sol Minzer and Victor Frankfurt, for the balance of the lease term as provided for in said lease upon the payment of the rental and the performance of the other terms of the lease."

In Reeves v. City of Dallas, supra, it is said in discussing the elements to be considered in arriving at values [195 S.W.2d 582]:

" * * * In such case, the elements that went to make up the value of the subsidiary estate and to qualify expert witnesses to express opinions as to its value, are: the kind and character of the *property upon which the lease is attached*, its location and accessibility to the public, the terms and conditions of lease contracts, the adaptability of the leased premises for the purposes for which the lease was given, and the profits or loss in the operation of the business on the leased premises."

A California case, Sacramento & San Joaquin Drainage Dist. v. Truslow, 125 Cal.App.2d 478, 270 P.2d 928, 933, 271 P.2d 930, says:

"If the covenant to pay rent is not affected by the proceedings and judgment of condemnation, it is clear that the lessor would be entitled as compensation only to the present value of his reversion, which he holds subject to the term created by the lease; and the lessee continuing personally liable but losing his estate, and rights to its enjoyment, would be entitled to receive not merely the value of the term, but also a sum of money equivalent to the present value of the sum of rents payable in futuro. That is, he should receive the value of his term, subject to the rent, and such further sum as would be considered a present equivalent for the rent to be thereafter paid, and the lessor would receive correspondingly less."

■ Each of the Turnpike Authority's valuation witnesses apparently applied the formula set out in the Sacramento & San Joaquin Drainage Dist. case in making their estimates. Each testified that the leasehold estate of W. B. Johnson in the part taken had no value because the rental reserve in the lease was equal to or in excess of the reasonable market rental value, but each allocated from $3,800 to $4,000 damages to the lessee as representing his interest in the part taken, the reason given for such allocation being a recognition of the fact that during the remaining term of the lease appellant Johnson would have to continue paying rent for the property taken although he would not have the use and enjoyment thereof. Under authorities mentioned, the appellant was not entitled to show the value of the leasehold without reference to contractual rentals, and the trial judge properly refused examination of witnesses in this respect; likewise, the court properly refused the instruction to the jury that rental contracted for in the lease be disregarded in determining the leasehold fair market value for the remainder of the term. Appellants' Points 4 and 5 are respectfully overruled.

Appellants' 6th point is:

"Error of the Court in submitting Special Issues Nos. One, Two and Three wherein the Jury was requested to find the cash market values of the land and improvements in question as a whole and instructed not to consider the fact that said property was subject to an outstanding leasehold interest since same were not ultimate issues and misplaced the burden of proof."

■ It may be generalized from the many authorities in the books that the statutes relating to eminent domain comprehend compensation for damage to property rather than for damage to persons, and that the ultimate issue in any condemnation case, assuming the right to condemn, is admitted, as in this case, is (1) the value of the land taken; and (2) the extent of damage to the land remaining.

■ The trial court submitted Special Issues No. 4 through No. 9 which operated to apportion the gross award between the two claimant owners, Victor Frankfurt and Sol Minzer, as the landowners, and W. B. Johnson as the lessee. This procedure is in accord with that outlined in 16 Tex.Jur., Eminent Domain, Sec. 196, wherein it is said:

"There may arise a question as to whether different estates or interests in the property are to be valued and the amount apportioned among the separate interests. The usual method of evaluating several interests in a tract taken by eminent domain is to ascertain the market value of the tract as though owned exclusively by one party. And in the absence of damages to other property not taken, this will ordinarily determine the extent of the liability of the condemnor. The amount so ascertained is then apportioned among the owners of the various interests or estates. However, separate valuation of the various interests may also be made,

subject to the limitation that the total valuation shall not exceed the value of the property if it were owned by one person."

The rule thus stated finds support in 18 Am.Jur., Eminent Domain, Sec. 239; City of Waco v. Messer, Tex.Civ.App., 49 S.W. 2d 822, modified in other particulars 124 Tex. 417, 78 S.W.2d 169; Reeves v. City of Dallas, supra; Grand River Dam Authority v. Gray, 192 Okl. 547, 138 P.2d 100.

Then in City of St. Louis v. Rossi, 333 Mo. 1092, 64 S.W.2d 600, 604, the rule is stated in language, perhaps more apt, as follows:

"The well-established general rules of eminent domain seem to be that, when a piece of property is taken, in which the ownership is divided into several interests, as between the public and owners, it is considered one estate; that the public right is exercised upon the land itself without regard to the subdivisions of interest; that the amount of the value of the land to which each one of the owners of the interest is entitled is no concern of the condemnor; that the various owners' interests in the property are transferred to the fund, allowed as damages to compensate them for the injury to the land, which is substituted for the property taken; that the value of the property taken is all that the condemnor must pay, and this value cannot be increased by any contracts or distribution among the different persons owning interests in it; and that the sum of all the parts can not exceed the whole."

Issues 1, 2 and 3 as given seem to be in conformity with authoritative decisions and no error is disclosed. Appellants' sixth point is respectfully overruled.

The judgment of the trial court is affirmed.