**URBAN RENEWAL AGENCY OF the CITY OF LUBBOCK, Petitioner,**

v.

**D. P. TRAMMEL et al., Respondents.**

No. A–11389.

Supreme Court of Texas.

Oct. 25, 1966.

Rehearing Denied Nov. 23, 1966.

Brock, Wright, Waters & Galey, William T. Kirk, Jr., Lubbock, for petitioner.

Nelson, McCleskey & Harriger, R. Rex Aycock, William J. Gillespie, Lawrence Fischmann, Lubbock, for respondents.

GREENHILL, Justice.

This is a condemnation case. The main question is whether there is evidence to support the jury's finding as to the market value of the property taken. Also involved is the wording of the special issues on valuation submitted to the jury. This latter problem arises because one of the buildings upon the land was subject to a lease for a term of years.

D. P. Trammel and wife owned business property in Lubbock. A portion of the property was leased to Harold Deering for a grocery store. The property was condemned by the Urban Renewal Agency, and special commissioners made an award of $24,500 for the property. Trammel appealed to the county court where the jury found the market value of the property as a whole, including Deering's lease, to be $48,000. This amount was divided so that Trammel recovered $40,000 and Deering $8,000. The Court of Civil Appeals sitting at Amarillo affirmed. 399 S.W.2d 852.

The property of Trammel which was taken consisted of two town lots upon which there were five buildings. One was a concrete building occupied by Deering as a grocery. We shall treat Deering's lease as being one for 10 years. The second building was occupied as a pool hall. A third building housed a barber shop. There were also two small residential frame buildings on the property. The only leasehold involved is that of Deering.

In condemnation proceedings where the property sought is subject to a lease, the judge or jury first determines the market value of the entire property as though it belonged to one person. Then the fact finder apportions the market value as between the lessee and the owner of the fee. City of Waco v. Messer, 49 S.W.2d 822 (Tex.Civ.App.1932), aff'd in part, rev'd in part, 124 Tex. 417, 78 S.W.2d 169 (1935); Aronoff v. City of Dallas, 316 S.W.2d 302 (Tex.Civ.App.1958, writ ref'd n. r. e.); Reeves v. City of Dallas, 195 S.W.2d 575 (Tex.Civ.App.1946, writ ref'd n. r. e.); In re Delancey St., 120 App.Div. 700, 105 N.Y. S. 779 (1907); Comment, A Survey of Landlord and Tenant in Eminent Domain, 3 Willamette L.J. 39, 46 (1964).

There were several valuation witnesses for the Urban Renewal Agency. Their testimony was that the value of the entire property taken was in the area of $23,000. There were four witnesses for Trammel. None of them attempted to testify as to the market value of the land and buildings taken on the basis of comparable sales because, apparently, there had been none in the area. These witnesses used

two other methods: (1) the income method and (2) the value of the land plus a cost-less-depreciation of the improvements. This is also referred to as a replacement-cost method.

■ As stated, the jury found the value of the entire premises taken, including the value of Deering's lease, to be $48,000. No witness testified to a value of the property taken in excess of $43,196.30. Witnesses for Trammel estimated the market value at between $40,000 and $43,196.30. The question, therefore, is whether there is evidence to support the $48,000 jury finding. We hold that there is not.

The problem is one of interpreting the evidence of Trammel's witnesses. There is evidence that the Deering leasehold was advantageous to Deering and that it had a value of $8,000. There is evidence from Trammel's witnesses as to valuations for the land and improvements at between $40,000 and roughly $43,000. It is Trammel's contention that his witnesses were not testifying to the value of the entire property taken, but that they were testifying only about the lessor's interest. No witness expressly stated that he was valuing only the lessor's reversionary interest. Viewing the testimony as a whole and reading it in context, we conclude that the witnesses were testifying to the value of the entire property, i. e., to the reasonable market value of the land and the improvements thereon. We shall discuss the testimony of each of the four witnesses. While there are two volumes of testimony (all of which we have considered), the testimony set out below includes, at least in substance, a summary of the evidence referred to in Trammel's brief as supporting his assertions.

T. C. Stinson was asked if he had had occasion "to appraise some property at 19th and Ash belonging to D. P. (Jack) Trammel." He answered, "Yes, sir." This is construed by Trammel to mean that Stinson was employed to value only Trammel's interest in the property, exclusive of the lessee's interest. We disagree. We regard the testimony and the answer as simply being introductory to Stinson's testimony. Stinson further testified that he made the appraisal for Trammel and not for the lessee. We construe that to mean that he made the appraisal at the request of Trammel and not at the request of the lessee and that he was paid by Trammel alone. Following that statement he was asked:

"Q. * * * and you made your appraisal,—you have undertaken to determine the entire fee simple value, what the entire property would sell for.

"A. That's right.

"Q. And all ownerships in that property?

"A. Well, I just appraised for the buildings and the land.

"Q. And what it would sell for on the market?

"A. Right.

"Q. Giving the purchaser a good clear title to the property?

"A. That's right."

The contention is made that since he "just appraised for the building and the land," he was appraising only the lessor's interest. We do not so construe it. Using the value of the land and estimating the cost of the improvements less depreciation, Stinson arrived at a value of $42,880. This, of course, included all of the property taken.

Using the income approach, Stinson reached a value of $43,196. In arriving at this value, he used the rental received by Trammel. It is argued that since there was evidence that a portion of Trammel's property which was leased to Deering was leased upon terms favorable to the lessee, and the actual rental received by Trammel was used in arriving at "market value," the witness must have been talking only about Trammel's reversionary interest. The witness did not attempt to state any

conclusion as to what he regarded as market value of the property if it had been leased for a higher figure.[1]

Trammel's witness Scott likewise began by saying he had been requested to appraise "some property at 19th and Ash here in the City of Lubbock." Using the income approach, Scott testified to a market value of $41,750. Using the replacement-cost method, he testified to a value of $42,937. On cross examination Scott testified:

"Q. John, your appraisal is on the total market value of the property, what it would sell for between a willing buyer and a willing seller, is that right?

"A. That's right.

"Q. And that includes all interest?

"A. Well, it—it's the market value between who I represent, the owner and the Urban Renewal Agency, that's their differences.

"Q. Well, I'm talking about a willing seller, your income approach is your opinion as to what the property would sell for on the market?

"A. Yes.

"Q. And that would include the full title?

"A. Yes."

Trammel's witness L. D. Whiteley was asked by Trammel's counsel, "L. D., did I ask you to appraise some property at 19th and Ash in the City of Lubbock?" He answered, "Yes." As above, it is contended that there had been a request to appraise only Trammel's reversionary interest in the grocery store plus his ownership of the remainder of the property.

Whiteley testified that he used "recognized measures of appraising commercial property for market value." He used the willing-buyer, willing-seller approach. In ascertaining market value by the "income approach," he said it would be worth $43,196 if it were in "tip-top" condition. But it needed some repairs; so he thought the reasonable market value was $40,000. Whitely estimated the value of the land at $28,000. He estimated $14,108 as the cost of replacing the buildings and thus arrived at a total value of $42,108. But he "took a little off" for painting and repairs and arrived at the reasonable market value estimate of $40,000.

The fourth witness, Billy Meeks, also said he had been asked to "appraise for market value Mr. Trammel's property at 19th and Ash." On cross examination, his testimony was:

"Q. Now, in regard to arriving at market value of the property, I believe you came up with the opinion that $41,000.00 was the fair market value of the property, what it would sell for, the complete title?

"A. Yes."

Having reviewed all the testimony including that set out above, we conclude that there is no evidence to support the jury's finding that the market value of the land and improvements as a whole, including the interests of Trammel and Deering, was $48,000. Gulf, C. & S. F. R. R. Co. v. Fink, 18 S.W. 492 (Tex. Comm.App.1892, opinion adopted); State v. Nesom, 395 S.W.2d 424 (Tex.Civ.App. 1965, writ ref'd n. r. e.).

There is evidence in the record to support the value assigned to Deering's leasehold interest, and we are urged to sever his interest and affirm the judgment as to him. The lessee's interest, however, must be apportioned out of the total market value of the whole property. Since the market value of the whole property must be redetermined at a new trial, and since

1. We do not have before us the evidence question as to whether actual rentals received or "fair rental value" should be used in determining market value of the entire property taken. Compare this Court's opinion in Texas Electric Service Co. v. Linebery, 162 Tex. 570, 349 S.W.2d 105–106 (1961).

this redetermination could result in different values being assigned to the two interests in question, we cannot, in the interest of justice, affirm the judgments of the trial court and the Court of Civil Appeals as to Deering.

■ The Urban Renewal Agency also complains of the special issues used in submitting this case to the jury, contending that the issues allowed a double recovery for the value of Deering's leasehold interest. While the issues used may not technically be incorrect, they are so phrased as to be likely to mislead the jury, as they did in this case; and in the light of a new trial, we direct the submission of the issues in a different form.

The trial court sent the case to the jury on three special issues. In the first issue the court asked the jury to determine from a preponderance of the evidence what the market value of the land and improvements as a whole was at the date of the trial, "including the interest of the owner, D. P. Trammel, together with the lessee's leasehold interest in said land and improvements. * * *" The second issue asked the jury to apportion to Trammel the market value of his interest in the land and improvements out of the amount found in the first special issue. The third issue requested the jury to apportion to Deering the market value of his leasehold estate out of the total market value found in the first issue. Such a submission tends to allow the jury to answer the last two issues first, then adding those two amounts to answer the first issue. It is our view that the trial court should submit two issues:

■ First the court should ask the jury to determine the cash market value of the property taken, including the improvements thereon. In connection with this issue, the jury should be given the usual definition of cash market value, the cash price which the property would bring if offered for sale by one who desired to sell but was under no obligation to sell, and was bought by one who desired to buy but was under no necessity to buy.

■ The second issue should inquire as to the cash market value, if any, of the lessee's leasehold interest, with a suitable definition of "lessee's leasehold interest" and the cash market value thereof.[2] The court can determine the value of the owner's (Trammel's) interest by subtracting the answer to the second issue from the answer to the first.

2. The instructions given in the case at bar were:

You are instructed, that by the term "leasehold estate of the lessee," is meant, the right to use, and occupy the land and improvements, described in the lease between lessor and lessee, for the balance of the lease term and renewal term, if any, upon the payment of the rentals and performance of the other terms of the lease.

You are instructed further that by reasonable market value of the leasehold interest is meant the cash price the leasehold interest would bring when offered for sale by one who desires to sell but is not obliged to sell and is bought by one who desires to buy but is under no necessity of buying.

There is no point before us specifically attacking the above definitions, and we express no opinion on the correctness of them. Other courts and writers have attempted to frame instructions. See, for example, Purnell, The Valuation of the Leasehold Estate, Southwestern Legal Foundation Institute on Eminent Domain 79 at 92 (1959); Rayburn, Texas Law of Condemnation, 275 § 192(2) (1960); City of Ashland v. Price, 318 S.W.2d 861 (Ky.1958); City of Dothan v. Wilkes, 269 Ala. 444, 114 So.2d 237 (1959). We do not, by citing the above, wish to be understood as approving them. Also, to be considered is City of Waco v. Messer, 124 Tex. 417, 78 S.W.2d 169 (1935). We deem it preferable to allow the trial court, with the benefit of counsel for all parties, to arrive at the definitions which best fit the particular case. Particular leasehold contracts and other circumstances in other cases may require particular treatment. Some of these problems are presented in 1 Orgel, Valuation Under Eminent Domain, § 121 et seq. (2d ed. 1953).

■ The Urban Renewal Agency complains of the admission in evidence of testimony by its director, Orville Alderson, that it urged the city not to grant Trammel a building permit to repair his property after the Agency determined to take the property. In our opinion the Agency invited this testimony by introducing evidence that the property was in a state of disrepair and by inquiring of Trammel why he had been prevented from making repairs. Under these circumstances the admission of Alderson's testimony was not error. The question as to the admissibility of this evidence as an original proposition by the condemnees is not properly before us under the status of the present record.

■ The final point of the Agency concerns alleged improper oral argument of Trammel's counsel. This point relates to the repeated emphasis of Alderson's testimony, discussed above, by Trammel's attorney to the jury. Reference to this evidence cannot be error if the admission of the evidence itself was not error.

The judgments of the courts below are reversed, and the cause is remanded to the county court at law for a new trial.