**TEXAS PIG STANDS, INC., et al.,**
**Appellants,**

v.

**Elizabeth Greeson KRUEGER et vir, et al.,**
**Appellees.**

**No. 14761.**

Court of Civil Appeals of Texas.

San Antonio.

May 7, 1969.

Rehearing Denied June 11, 1969.

Roy H. Garwood, Jr., San Antonio, Crawford C. Martin, Atty. Gen., of Texas, Nola White, Hawthorne Phillips, Watson C. Arnold, Woodrow Curtis, Dudley Fowler, Austin, for appellants.

Pat Maloney, San Antonio, for appellees.

BARROW, Chief Justice.

The condemner, State of Texas, and lessee, Texas Pig Stands, Inc., a/k/a Pig Stands Company, Inc., have perfected appeals from the judgment entered on a jury verdict in this condemnation action brought by State under Art. 3264 et seq., Vernon's Ann.Civ.St., against Elizabeth Greeson Krueger et vir, et al., owners of the fee, and lessee to take 9714 square feet out of a tract of land containing 14939 square feet. This tract contains 110 feet fronting on Broadway in the City of San Antonio, and since 1929 has been leased to the Pig Stands Company for operation of a restaurant. All of the substantial improvements that were on the land were taken in condemnation.

Four issues were submitted to the jury, as suggested in Urban Renewal Agency v. Trammel, 407 S.W.2d 773 (Tex.Sup.1966), and in response to same the jury found: 1. The cash market value of the property taken, including all improvements, was $118,000 as of the date of taking, March 20, 1968. 2. The cash market value of the property remaining, immediately before such taking, was $28,000. 3. The cash market value of the property remaining immediately after such taking was $4,500. 4. The cash market value of the leasehold interest of lessee was $10,000. Judgment was entered on this verdict whereby condemnees recovered from State the total sum of $141,500, which was apportioned as follows: $131,500 to appellees, the landowners, and the remaining sum of $10,000 to the Pig Stands Company, lessee.

No question is presented on this appeal regarding appellees' right to recover the sum of $23,500 for damage to the remain-

der. The thrust of both State and Pig Stands' appeals relates to the apportionment of the sum of $118,000 found in response to Issue No. 1, between lessor-owners and lessee. A most difficult problem is presented in that under the terms of the lease all of said improvements were owned by lessee and yet it is undisputed that they could not economically be removed.

In 1959 Pig Stands entered into a new ten-year lease agreement with A. W. Krueger, assignor of appellees, which was to commence in 1962 and expire on September 30, 1972. Under this agreement, lessee agreed to erect certain improvements on said property to cost approximately $25,-000, exclusive of equipment and trade fixtures, "all of which said improvements above the ground under the terms of said agreement remain the property of the Lessee and are subject to removal at the expiration or other termination of this contract, provided all rents, taxes, assessments, and other covenants of this lease have been met." It was further agreed that at the termination of any extended term of said lease, lessee should have first refusal of any bona fide offer to lease that lessor might receive. Further, if lessor should elect to sell same, lessee would have first refusal of any bona fide offer that lessor was willing to accept. If the lease was not renewed for any reason, lessor should have first option to purchase from lessee the permanent improvements erected on said premises, or not to purchase same and require lessee to remove them. If lessor elected to purchase the improvements, the price, if not mutually agreed upon, would be determined by the San Antonio Real Estate Board or appraisers in accordance with certain provisions of said lease. At the time of the taking by State on March 20, 1968, there were 54 months remaining on said lease and all covenants of the agreement had been met by lessee.

In accordance with said agreement, Pig Stands erected a building and other permanent improvements in 1959 at a cost of $44,580.14. The testimony at this trial was that the replacement cost of these improvements, less depreciation, ranged from $52,-570 to $39,896 as of the time of taking. Appellees' expert witness, Mr. Lipscomb, testified that the cash market value of the severed land without the improvements was $69,940, but that the severed land as enhanced by the improvements was of a cash market value of $122,510. No complaint is made of the jury's finding that the cash market value of the severed land and all improvements was $118,000, therefore, the basic question presented is, who is entitled to compensation for the permanent improvements which were owned by Pig Stands under the lease agreement, but which could not economically be removed?

█ It is obvious from the record and, in fact, conceded by appellees, that the verdict of the jury and judgment of the court is predicated on the proposition that appellees were entitled to all compensation for the improvements. The cash market value of the leasehold interest, which was found to be $10,000, is based almost entirely on the uncontradicted testimony of appellees' witness Lipscomb that the difference between the economic rental value of the leasehold and the contract rent was $150.00 per month.[1] Furthermore, although the highest cash market value of the severed land alone was $69,940, the judgment of the court awards appellees $108,000 for the enhanced value of the severed land.

Appellant Pig Stands complains of this result as well as certain alleged errors leading to same by seventeen points of error and prays that the judgment be modified to award it the value of the improvements, or that the cause be remanded. On the other hand, appellant State urges that since Pig Stands was undisputably the owner of the

---

1. By the time of trial, Pig Stands had executed a lease on the adjoining property for $625.00 per month. Lipscomb used this increased rental as a basis for his finding of leasehold value.

improvements the judgment for appellees should be reduced to the sum of $69,940, and in all other respects affirmed; thereby, in effect, giving State the benefit of the value of the improvements. State also complains of three procedural points as the basis for a remand of the cause.

■ It is well settled that a leasehold is property, and the lessee is entitled to compensation when all or a part of the property leased is taken or damaged by eminent domain during the term of the lease. Urban Renewal Agency v. Trammel, supra; Reeves v. City of Dallas, 195 S.W.2d 575 (Tex.Civ.App.—Dallas 1946, writ ref'd n. r. e.). In Trammel the Supreme Court held that where the property sought is subject to a lease, the judge or jury first determines the market value of the entire property as though it belonged to one person and then apportions the market value as between the lessee and the owner of the fee. The Court said that two issues should be submitted: "First the court should ask the jury to determine the cash market value of the property taken, including the improvements thereon. In connection with this issue, the jury should be given the usual definition of cash market value, the cash price which the property would bring if offered for sale by one who desired to sell but was under no obligation to sell, and was bought by one who desired to buy but was under no necessity to buy. The second issue should inquire as to the cash market value, if any, of the lessee's leasehold interest, with a suitable definition of 'lessee's leasehold interest' and the cash market value thereof." In a footnote, while quoting the definitions given by the trial court, the Supreme Court expressly declined to approve them, or the definitions given in other authorities cited by the Court, and

said: "We deem it preferable to allow the trial court, with the benefit of counsel for all parties, to arrive at the definitions which best fit the particular case. Particular leasehold contracts and other circumstances in other cases may require particular treatment."

It is significant that the lessor in *Trammel* owned the improvements which were used by lessee. Nevertheless, the trial court in the case before us submitted the same definition of "leasehold interest of the lessee," and "reasonable market value of the leasehold interest" as given in Trammel.[2] Immediately following same was an additional instruction which undoubtedly contributed significantly to the jury's award of the value of the improvements to appellees. The trial court charged: "You are further instructed that the improvements are to be considered only to the extent that they add to, enhance, or increase the value of the property involved as a whole." State and appellees, under these instructions, were able to argue that lessee's interest in the improvements was limited to use of same during the term of the lease.

■■ It is uniformly recognized that where a lessee erects improvements on the land and has the right to remove them by virtue of his agreement with lessor, the lessee, on the apportionment of the award, is entitled to that part of the award which has been allowed for the value of such improvements. 27 Am.Jur.2d, Eminent Domain, § 292; 29A C.J.S. Eminent Domain § 175(2); Nichols on Eminent Domain, Vol. 4, § 12.42(1), p. 305, § 13.121, p. 369; 3 A.L.R.2d 286—Annotation: Eminent Domain—Lessees' Damages, § 8; 75 A.L.R. 1495—Annotation: Right of Tenant to Remove Buildings, p. 1499; State ex rel. State Highway Commission v. Vitale, 411 S.W.2d

2. "You are instructed, that by the term 'leasehold estate of the lessee,' is meant, the right to use, and occupy the land and improvements, described in the lease between lessor and lessee, for the balance of the lease term and renewal term, if any, upon the payment of the rentals and performance of the other terms of the lease.

"You are instructed further that by reasonable market value of the leasehold interest is meant the cash price the leasehold interest would bring when offered for sale by one who desires to sell but is not obliged to sell and is bought by one who desires to buy but is under no necessity of buying."

174 (Mo.Sup.1967); Hopper v. Davidson County, 206 Tenn. 393, 333 S.W.2d 917 (1960); City of Buffalo v. Michael, 16 N.Y.2d 88, 262 N.Y.S.2d 441, 209 N.E.2d 776 (1965); Marraro v. State, 12 N.Y.2d 285, 239 N.Y.S.2d 105, 189 N.E.2d 606 (1963); State v. De Lay, 181 N.E.2d 706 (Ohio Ct. of App.1959). This rule has been recognized in Texas. See County of McLennan v. Shinault (first appeal) 302 S.W.2d 728 (Tex.Civ.App.—Waco 1957, no writ)—(second appeal), 330 S.W.2d 486 (Tex.Civ. App.—Waco 1959, writ ref'd n. r. e.); Brazos River Conservation and Reclamation Dist. v. Adkisson, 173 S.W.2d 294 (Tex.Civ.App.—Eastland 1943, writ ref'd).

Such rule has application, however, only to the apportionment between lessor and lessee and the apportionment is of no concern to condemner. If the improvements were affixed to the premises in such manner as to constitute part of the realty, the condemner would have to compensate lessee for such improvements, notwithstanding the fact that as between the lessor and lessee the improvements were regarded a personalty. Frankfurt v. Texas Turnpike Authority, 311 S.W.2d 261 (Tex.Civ.App.— Texarkana 1958, no writ); Brazos River Conservation and Reclamation Dist. v. Adkisson, supra; Fort Worth & D. S. P. Ry. Co. v. Judd, 4 S.W.2d 1032 (Tex.Civ.App. —Amarillo 1928, writ dism'd); 3 A.L.R.2d 286, supra, § 10; 27 Am.Jur.2d, Eminent Domain, § 292; 29A C.J.S. Eminent Domain § 175(2); Nichols on Eminent Domain, § 13.121, p. 376.

■ In applying these general rules to the record at hand, it is clear that the verdict of the jury and judgment of the court is erroneous insofar as Pig Stands is concerned. Under the facts in this case, it is entitled to receive compensation for the difference, if any, between the market rental and the contract rental for the balance of said term. It was also entitled to be compensated for its ownership of the improvements which were taken by State. The record demonstrates that Pig Stands was compensated only for the economic rental value of the leasehold interest and the enhancement value of the improvements was awarded appellees.

■ The lease clearly and unambiguously gave title to all the improvements in question to lessee, but it undoubtedly was obvious from the outset that it would not be economical or feasible to remove them. The improvements consisted primarily of a masonry building with a concrete foundation, designed and built for a Pig Stands restaurant, with a useful life of about forty years. In recognition of this obvious fact, the parties to the agreement provided for several alternatives which, although reasonable in view of their thirty-year prior association, do not meet the situation presented by this condemnation. Lessee was given first refusal of any bona fide offer received by lessor to either lease or sell the property at the expiration of this lease. In the event lessee decided not to avail itself of either of these rights, lessor was given the right, *at his option,* to buy the improvements for a price to be determined in accordance with a prescribed evaluation or to require their removal. Thus it is seen that at the expiration of the lease, the improvements would be of value to both appellees and Pig Stands, primarily from the standpoint of continuing to do business with each other. In the event they were unable to do so, the final alternative would be removal of the improvements by Pig Stands, which, as a practical matter, would destroy their value to *either* party.

The apportionment of the value of such improvements presents an extremely difficult problem, both from the standpoint of testimony of value and of the appropriate definition to be given the jury. The textbook writers, supra, while recognizing this problem, have suggested no uniform or satisfactory solution. The problem was reviewed at length in State of Ohio v. De Lay, supra, which involved a factual situation strikingly similar to ours. It was there held that the lessee was entitled to be compensated for the structures which he had

the right to remove, although the lessor had shown that they could not be removed from the land. The jury had found that the value of the structures was $24,500, and this sum was awarded lessee, plus the economic value of his leasehold interest. Other Courts also have compensated lessee on the basis of the market value of the improvements owned by him. See Marraro v. State, supra; Queensboro Farm Products v. New York, 5 A.D.2d 967, 171 N.Y.S.2d 646. Pig Stands requested an instruction in substantially this form, but it was refused.

Other authorities take the view that in determining the compensation due lessee, the leasehold and improvements should be viewed as a unit and not as separate items. 27 Am.Jur.2d, Eminent Domain, § 292, pp. 101, 102; Nichols on Eminent Domain, § 13.121(1), pp. 371, 373. In Brazos River Conservation and Reclamation Dist. v. Adkisson, supra, it was held that the trial court was correct in considering the fixtures as adding to and enhancing the value of lessee's condemned property and in refusing to consider them as separate items of damage. Furthermore, it is seen the jury was properly instructed to consider said improvements "only to the extent that they add to, enhance, or increase the value of the property involved as a whole." State v. Carpenter, 126 Tex. 604, 89 S.W. 2d 979 (1936); State v. Turboff, 431 S.W. 2d 953 (Tex.Civ.App.—Houston (1st) 1968, no writ); Lower Nueces River Water Supply Dist. v. Sellers, 323 S.W.2d 324 (Tex. Civ.App.—San Antonio 1959, writ ref'd n. r. e.) None of these cases involved a leasehold, but it would follow that any apportionment of the sum found in response to Special Issue No. 1 should be made on the same basis.

■■ We, therefore, conclude that the value of the improvements should be included as a unit with the other values of the leasehold interest. However, the instruction should appropriately advise the jury of the ownership of the improvements. Here, despite the clear language of the lease agreement that Pig Stands owned the improvements subject to the terms of the lease, appellees, as well as their expert witness, took the position before the jury that the improvements would belong to appellees at the conclusion of the lease. In support thereof they showed that Pig Stands had set up a depreciation schedule on its income tax return whereby the improvements would have been charged off by the end of the lease. Such a result would not affect the rights of appellees and Pig Stands under the lease.

■ This erroneous impression was compounded in that State argued to the jury that Pig Stands was only entitled to the value of the use of the improvements during the lease, although on this appeal State asserts that, as a matter of law, Pig Stands was the owner of same. The trial court repeatedly stated, in response to Pig Stands objections to the receipt of evidence or oral argument at variance with the lease: "The lease speaks for itself." Such verbal instruction was not sufficient to overcome the erroneous impression created by appellees and State that appellees would own the improvements at the conclusion of the lease. The verdict of the jury clearly reflects a belief by them that appellees would own the improvements not only at the expiration of the lease but even at the time of taking.

We sustain Pig Stands' point of error that the verdict is contrary to the evidence in that it does not recognize its ownership of the improvements. Furthermore, we sustain Pig Stands' complaints that the definition of leasehold interest erroneously limited its right in the improvements to the right to use and occupy them during the term of the lease. Such errors require a reversal of the judgment and it is therefore unnecessary to discuss the other points raised by Pig Stands which are not likely to recur in the same manner on another trial. Inasmuch as there is no finding of the value of the leasehold interest of Pig Stands including its ownership of the improvements, the case must be remanded for

apportionment of the sum found by the jury to be the cash market value of the severed land plus all the improvements.

▆▆▆ Since the matter of such apportionment is of no concern to the condemner, under the authorities heretofore set forth, State is not entitled to assert or take advantage of such error. Its third and fourth points are therefore overruled and we must look to State's other points to determine if it is entitled to a remand of the entire cause. Under its first two points State complains of the failure of the court to give a special requested instruction to the jury to the effect that the burden of proof as to value was upon condemnees. The court submitted each of the four issues patterned after those suggested in State v. Carpenter, supra. Each issue inquired: "From a preponderance of the evidence, what do you find was the cash market value on March 20, 1968 * * *?" Such inquiry properly placed the burden of finding value upon the condemnees and the court did not err in refusing to give the requested instruction to the jury. J. H. Robinson Truck Lines v. Ragan, 204 S.W.2d 662 (Tex.Civ.App.—Galveston 1947, no writ). Cf. Marosis v. Nira, 125 S.W.2d 404 (Tex.Civ.App.—San Antonio 1939, writ dism'd w. o. j.).

▆▆▆ State concedes that the finding of $118,000, in response to Issue No. 1, is within the range of the testimony, but urges that the testimony of appellees' value witness Lipscomb was unsupported by market data and constituted a mere conclusion so as to require the judgment to be reduced to the value set by State's witness Noble. Mr. Lipscomb testified at length, both on direct examination and under extensive cross-examination by state's attorneys, as to the basis for his valuation of $122,510 for the land taken, together with all improvements. Without objection by State, he analyzed six sales of properties which he said were comparable to the prop-erty in question. The basis for his use of these comparable sales was fully explained. The jury was instructed in the charge of the court, as requested by State, as to the limited use of comparable sales. We see no valid reason for disregarding Mr. Lipscomb's testimony admitted without objection. State's fifth point is overruled.

▆▆▆ In its last point, State complains of the testimony of Mr. Hailey, president of Pig Stands, who testified the leasehold interest was of the value of $49,660. Mr. Hailey had been associated with Pig Stands for thirty-eight years and was the principal stockholder in the corporation. As a part of his duties he negotiated leases with landowners and had been doing so for eleven years. Based on this experience, he testified that the fair market value of this lease was $49,660. Subsequently it was developed on voir dire, out of the presence of the jury, that one element that went to make up such valuation was the gross sales of the business. However, under extensive cross-examination, Mr. Hailey testified that this was just one element and, irrespective of same, in his opinion the leasehold had a value of $49,660. The trial court overruled State's motion to strike this testimony and State now complains of this action. The trial court did not err in refusing to strike the testimony of the witness Hailey. Nichols on Eminent Domain, Vol. 4, § 12.42(1). In any event, such testimony relates only to the issue of apportionment as between appellees and Pig Stands.

The judgment of the trial court that condemnees recover from State the sum of $141,500 is affirmed, however, that part of the judgment apportioning said sum is severed, reversed and remanded to the trial court for apportionment between appellees and Pig Stands of the sum found as the cash market value of the severed land, together with all improvements. The costs of this appeal are taxed one-half to the State and one-half to appellees.