**The BOARD OF REGENTS OF the UNIVERSITY OF TEXAS SYSTEM, Appellant,**

v.

**John J. FISCHER et al., Appellees.**

No. 12002.

Court of Civil Appeals of Texas, Austin.

July 11, 1973.

Rehearing Denied Aug. 8, 1973.

Ed Small, Small, Herring, Craig & Werkenthin, Austin, for appellant.

Douglass D. Hearne, Stayton, Maloney, Black, Hearne & Babb, Austin, for appellees.

O'QUINN, Justice.

This is a suit in which the Board of Regents of the University of Texas System, as condemnor in a proceeding in eminent domain, acquired the leasehold interest of certain tenants and now appeals, contending that the trial court's instructions to the jury resulted in award of excessive damages.

The Regents in 1970 purchased the fee to lots 7 and 8, Block 71, Original City of Austin, situated at the southwest corner of the intersection of Colorado Street and West Seventh Street in Austin, and then brought these proceedings to acquire the leasehold interests of John J. Fischer, individually, and the Lone Star Shoe Service, Inc., who occupied a portion of the building bought by the Regents.

The tenants, who are appellees, occupied a store-type space, approximately twenty feet by forty-six feet, at 622 Colorado Street, in the operation of a shoe repair and sales business, under a lease that would have expired July 31, 1973. The parties are agreed that the date of taking under condemnation was December 11, 1970, nearly thirty-two months prior to expiration of the lease.

Special commissioners appointed to assess damages awarded Fischer and Lone Star Shoe Service the sum of $5,758, and the tenants timely filed their objections to the award and notice of appeal. At the trial in county court at law the parties stipulated that the tenants would incur as special damages reasonable expenses of $627.35 in moving their fixtures, machinery, and equipment. The jury found the reasonable cash market value of the leasehold interest of Fischer and Lone Star to be $7,942.40. The trial court entered judgment for the tenants in the sum of $2,811.-75, being the difference between the award of the special commissioner and the sum of the jury's award and the stipulated special damages for moving costs.

It is not in dispute that the tenants had made certain improvements to the premises under their lease with the former owner, and the Regents concede on appeal that the trial court properly instructed the jury to compensate the lessees for any enhancement in the leasehold due to these improvements. Improvements consisted of electrical wiring, soundproofing, dustproofing, fireproofing, and an exhaust system, peculiar to the nature of the tenants' business.

Most of the improvements were attached permanently to the building, were custom fitted and incapable of use elsewhere, but amounted to enhancement of the premises.

The Regents bring one point of error: "The trial court erred in submitting the instructions to Special Issue No. 1 of the Court's Charge for the reason that such instructions instruct the jury to award double damages."

We will overrule the point of error and affirm judgment of the trial court.

The Regents succinctly state the gravamen of their appeal: "The only point of error raised . . . is to the instruction number 9 and the phrase 'plus the reasonable fair market value on December 11, 1970,' and the use of the date December 11, 1970 in the instruction following the Special Issue."

Instruction number 9 is quoted:

"9. You are further instructed that by the term 'reasonable cash market value,' as used in the following Special Issue, is meant the cash price that the exclusive right to use, occupy, and enjoy the land and improvements, plus the reasonable fair market value on December 11, 1970, of the improvements as defined and described below, for the length of time through July 31, 1973, would bring if offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying, the lessees' interest."

Special Issue No. 1, under which the jury found $7,942.40 to be the reasonable cash market value of the leasehold, follows:

"What do you find from a preponderance of the evidence to have been the reasonable cash market value, if any, on or about December 11, 1970, in Travis County, Texas, of the leasehold interest of the lessees, John J. Fischer and Lone Star Shoe Service, Inc., in the leased land and improvements, considering only the lessees'

exclusive right to use, occupy, and enjoy this land and improvements for the remainder of the primary term of their lease, less their obligation to pay rent and comply with the other terms and conditions of their lease?"

The additional instruction, following the special issue, is also quoted:

"In connection with the foregoing Special Issue, you are instructed that by the term 'leasehold interest of the lessees,' is meant the exclusive right to use, occupy, and enjoy the possession of the land and improvements described in the July 15, 1968, lease, for the term through July 31, 1973, taking into account such improvements which had been attached to the land by the lessees in order to enable them to properly carry on the trade or business contemplated by the lease agreement, which improvements were capable of being removed at the end of the lease period without material or permanent injury to the land, but only to the extent that such improvements added to or enhanced the value of such land, and only considering such improvements for which it would be economically impractical to the lessees to remove on or about December 11, 1970."

The Regents' position is that it was error to instruct the jury to consider the value of the improvements "on December 11, 1970," the date of taking, and to add this market value to the exclusive right to use and enjoy the land and improvements to the end of the lease through July 31, 1973, because in so doing the jury awarded double damages. The Regents insist that, by telling the jury to add the market value of the improvements at the time of taking to the fair market value of the lease remaining unused, the trial court " . . . gave 'enhancement' for the rest of the lease plus the present 'fair market value' of the improvements. This is double recovery."

As already observed, the Regents recognize that the lessees were entitled to compensation for any enhancement of the leasehold due to the improvements the lessees made to the premises. The Regents contend that the correct date for consideration of the fair market value of the improvements was the last day of the term of the lease, July 31, 1973, and not the date of taking, December 11, 1970. The Regents requested the trial court to submit instructions, in lieu of paragraph 9, which were substantially in the language of the instruction given, except as to the date for fixing the fair market value of the improvements.

The facts of this case distinguish it from the usual proceeding in condemnation in which the interest of the owner of the land and building and the interest of his lessee are being condemned in the same action. In this cause the owner of the premises sold the land and building to the Regents, and thereafter, upon failure to reach an agreement with the lessees, the Regents brought this action to condemn only the property of lessees, separate and apart from the interest of the former owner.

In the usual proceeding, two issues are submitted, the first pertaining to the market value of the property including the improvements, and the second inquiring as to the cash market value of the lessee's leasehold interest. By subtracting the answer to the second issue from the answer to the first, the interest of the owner may be ascertained. Urban Renewal Agency v. Trammel, 407 S.W.2d 773, 777 (Tex.Sup. 1966).

In some instances the improvements, in their entirety, are placed on the land by the lessee and remain the property of the lessee. In these cases the lessee is entitled to compensation for the part of the award which has been allowed for the improvements and also for the reasonable value of his leasehold interest. Texas Pig Stands, Inc. v. Krueger, 441 S.W.2d 940, 945 (Tex.Civ.App. San Antonio 1969, writ ref. n. r. e.).

In this case improvements added to the building by the lessees were, in large mea-

sure, peculiarly beneficial or essential to the operation of a shoe repair business. Some of the improvements, for example, provided exhaust or discharge of fumes and waste peculiar to the operation, others reduced noise and vibration generated by machinery used in the business, and the electrical wiring and system provided 220 volts for machines and included special safety switches for protection of workers.

The owner of the land and building placed none of these improvements on the premises. The lessee bore all expense of the improvements, which the record shows cost about $3,300. It is undisputed that lessees owned the improvements, although most of the improvements involved here apparently were attached to the building and as a practical matter were not removable. The improvements under consideration do not include shoe repairing machinery and equipment belonging to lessees which could be removed for use at another site.

■ In determining the compensation due lessees, the leasehold and the improvements should be viewed as a unit and not as separate items. Texas Pig Stands, Inc. v. Krueger, *supra*; Brazos River Conservation and Reclamation District v. Adkisson, 173 S.W.2d 294 (Tex.Civ.App. Eastland 1943, writ ref.). See 27 Am.Jur. 2d Eminent Domain, sec. 292, pp. 101–2. We consider the instructions of the trial court in this case adequate to bring about that result in obtaining the answer of the jury to Special Issue No. 1.

The Regents complain only that the trial court should have instructed the jury to consider the improvements as of the end of the lease, thirty-two months after the date of taking, and not at the same time the leasehold itself was being taken. To adopt the instructions requested by the Regents would permit the jury to separate the two items, the leasehold and the improvements, and to find a value for one at the time of taking and the other at a time nearly three years removed from the taking.

The Supreme Court in *Trammel* deemed "it preferable to allow the trial court, with the benefit of counsel for all parties, to arrive at the definitions which best fit the particular case." (407 S.W.2d at 777, fn. 2) In this case the trial court, with benefit of counsel, appears to have provided the jury with clear directions for ascertaining the damages to be awarded the lessees.

■ The jury heard two expert witnesses, each of whom stated that he had given consideration to improvements in suggesting a value of the leasehold for the remaining thirty-two months of the lease, and Fischer, one of the lessees, testified as to both items in reaching the damages he believed the lessees were entitled to. Each of the witnesses dealt with the improvements as of the date of taking and not as of the end of the lease. The date of taking is the proper date for ascertaining the value of property condemned, and the rule is applicable to leasehold interests. Reeves v. City of Dallas, 195 S.W.2d 575, 577 (Tex.Civ.App.Dallas 1946, writ ref. n. r. e.).

An expert witness called by the Regents testified that he took into consideration the improvements in so far as they would increase the rent of the property and arrived at a value for the leasehold in the sum of $2,805.50. The lessees called an expert who testified that the leasehold, aside from the cost of improvements, was worth $14,720 in his opinion. Fischer testified that he considered the leasehold worth $7,360 to the lessees, exclusive of the amount spent on improvements. The jury found damages in the total amount of $7,942.40. It appears that with the disparity of opinion among the witnesses the jurors applied their "common sense and experience to a fair solution of this controversy." See City of Houston v. Hendrix, 374 S.W.2d 764, 766 (Tex.Civ.App. Austin 1964, writ ref. n. r. e.).

The judgment of the trial court is affirmed.

Affirmed.