Opinion issued June 3, 2014



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00989-CV

————————————

**GENE SMIRL D/B/A GENE'S PEARLAND EXXON AND
GENE SMIRL D/B/A PEARLAND MOTOR COMPANY, Appellant**

**V.**

**THE STATE OF TEXAS AND
RMJ MILLER REAL ESTATE HOLDINGS, LTD., Appellees**

On Appeal from County Court at Law No. 1
Brazoria County, Texas
Trial Court Case No. CI042455

## MEMORANDUM OPINION

Appellant, Gene Smirl, doing business as "Gene's Pearland Exxon" and

"Pearland Motor Company" ("Smirl"), challenges the trial court's rendition of

summary judgment in favor of appellee, RMJ Miller Real Estate Holdings, Ltd. ("RMJ"),[1] in Smirl's suit against RMJ to recover a portion of condemnation proceeds for the value of his lost leasehold interest in the subject property. In three issues, Smirl contends that the trial court erred in granting RMJ summary judgment.

We affirm.

## Background

RMJ was the fee owner of real property located at Main Street and Broadway in Pearland, Texas. In 1995, RMJ's predecessors-in-interest[2] leased the real property to Holland Davis[3] to operate an automotive service station and used-car sales business. The lease agreement had a primary term of fifteen years, beginning August 1, 1995 and ending July 31, 2010. Pursuant to the lease, Davis agreed to pay a rental rate of $1,500 per month for the first five-year period and then renegotiate the rental rates in the two subsequent five-year periods. The lease provides, "It is distinctly understood and agreed . . . that any holding over after the expiration of this lease shall operate and be construed only as a tenancy from month to month." It further provides that "[n]o acceptance of rent" or "delay in

---

[1]  Appellee, the State of Texas, has filed a letter of nonparticipation in this appeal.

[2]  Rosalie Miller Acree, Michalyn Ordeneaux, and Jacalyn DeLange are not parties to this appeal.

[3]  Davis is not a party to this appeal.

enforcing any obligation shall be construed as a waiver of any default" and "shall not act as a waiver of [RMJ's] right to enforce the default provisions." And any assignment of the lease required RMJ's approval.

In July 2002, Davis sold the automotive business, namely, the "equipment, fixtures, goodwill, inventory, trade names, and other intangible assets," to Smirl. And Davis assigned his leasehold interest in the real property to Smirl. In the assignment agreement, which RMJ approved, RMJ and Smirl agreed to the following terms:

1. The Lease term shall be for a period of Ten (10) years, beginning on July 1, 2002, at the monthly rental of $2,000 per month payable on the 1st day of each month for the first Five (5) year[] period.
2. **The second Five (5) year period beginning on July 1, 2007, shall be at a monthly rental to be negotiated by the parties based upon fair market value of rentals in the area.**
3. For and in consideration of Ten and No/100 ($10.00) Dollars, the Lessee is granted an option to extend the lease for an additional Five (5) year period at the conclusion of the initial Ten (10) year term. Said option shall be exercised by giving notice of intent to exercise the option in writing to the Lessor within 90 days from the expiration of the initial term. The monthly rental for the option period shall be at a rate determined by the parties based upon fair market value of rentals in the area.
4. All other terms of the Lease . . . shall remain in full effect.

(Emphasis added.) The parties dispute whether they affirmatively negotiated the monthly rental for the second five-year period as emphasized above. Nevertheless, during the two years that followed, Smirl continued to pay rent in the amount of $2,000 each month.

On May 11, 2009, the State of Texas, acting through the Texas Transportation Commission, filed a statutory condemnation action to acquire 0.0519 acres of land from the 0.543-acre property for the expansion of a highway. The trial court appointed special commissioners to assess the condemnation damages. The commissioners assessed the condemnation damages at $140,899 at a hearing attended by RMJ and Smirl. Smirl timely filed an objection to the commissioners' award.[4]

On November 27, 2009, Smirl, by agreement of the parties, intervened in the condemnation suit, asserting an inverse condemnation claim against the State and seeking damages for his lost leasehold interest, lost personal property, and uncompensated moving expenses. He alleged that the State's condemnation of the real property had resulted in the taking of his own property, including his leasehold, billboard, canopies, permits, pumps, and storage tanks. Smirl also sought apportionment of any condemnation damages awarded to RMJ. In order to

---

[4]     Condemnation proceedings have two distinct phases. *Metro. Transit Auth. Harris Cnty., Texas v. Graham*, 105 S.W.3d 754, 757 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The first phase is administrative and involves a hearing before three special commissioners appointed by the trial court. *Id*.; *see* TEX. PROP. CODE ANN. §§ 21.014–.015 (Vernon Supp. 2013). The commissioners enter findings and determine the damages owed to the property owner. *Graham*, 105 S.W.3d at 757. If any party timely files an objection to the commissioners' award, it is vacated and the case proceeds to the second phase as any other judicial proceeding in the trial court. TEX. PROP. CODE ANN. § 21.018 (Vernon 2004); *Graham*, 105 S.W.3d at 757.

value the extent of his leasehold interest, Smirl sought a declaration that he and RMJ were in "the second five-year period" of the lease.

RMJ filed a cross claim against Smirl, seeking a declaration that the lease terminated on June 30, 2007 because Smirl had failed or refused to renegotiate the rental rate for the second five-year period of the lease. RMJ asserted that Smirl's possession of the premises continued as a month-to-month holdover tenancy when Smirl breached the lease by failing to renegotiate the rental rate as agreed.

RMJ then moved for summary judgment on Smirl's claim for apportionment of the condemnation proceeds on the ground that, after adequate time for discovery, "Smirl ha[d] produced no evidence of the value of the use and occupancy of the leasehold for the remainder of the lease term." RMJ also moved for summary judgment on its cross claim for declaratory judgment, arguing that "[t]he Lease expired as a matter of law on June 30, 2007" because "Smirl failed to perform a condition for renewal," namely, he "refus[ed] to negotiate the rental rate for the additional five-year term." It asserted that "[b]y continuing to occupy the property after expiration of the first five-year extension, Smirl became a holdover tenant." And it noted that the lease expressly provides that "any holding over by [Smirl] of the property after the expiration of [the lease] shall operate and be construed only as a tenancy from month-to-month." RMJ attached to its motion

5

the lease, the assignment, and the affidavit of Michalyn Ordeneaux, general partner of RMJ, who testified that,

> Towards the end of the first five-year extension period, we contacted [Smirl] to negotiate rent for the second five-year extension period. Despite his attorney's prior statement that the market rent was as much as $8,000 per month, [Smirl] refused to negotiate a new rental rate based on fair market value of rentals in the area. Instead, he continued to pay just $2,000 per month. Since the taking in this case, [Smirl] has vacated the premises and ceased to make any rent payments.

In his response, Smirl argued that RMJ's no-evidence motion should be denied because "there exists more than a scintilla of evidence in support of the value of the use and occupancy of the leasehold for the remainder of the lease term or of the value of [Smirl's] right to renew the lease." Smirl further argued that the Assignment provided for a ten-year period, and it required only that the parties negotiate the monthly rental rate based on fair market value for the second five-year period. Smirl asserted that RMJ continued to accept $2,000 in rental payments each month without objection. Smirl attached to his response his affidavit, in which he testified that,

> [b]ased on market research, the fair market value of the remaining lease term is approximately $576,000 as determined by the following:
>
> > The fair market monthly rent for a comparable lease is approximately $8,000. Because [Smirl] paid $2,000 under the terms of [the lease], [Smirl] enjoyed a difference in value of $6,000/month. Accordingly, [Smirl] enjoyed $72,000 in value under [the lease] for 12 months, or a 1 year period.

6

Consequently, there were 8 years left on the [lease] which amounts to $72,000 per year in value lost by [Smirl].

Smirl also attached his sales contract with Davis, the lease, the assignment, an unexecuted lease agreement from 2007, a list of his monthly rent payments, and the State's amended petition for condemnation.

After a hearing, the trial court granted RMJ's no-evidence summary-judgment motion on Smirl's claim for apportionment of the condemnation proceeds. The trial court also granted RMJ a declaration that "[a]s of July 1, 2007, the leasehold interest of [Smirl] became a month-to-month tenancy" as a matter of law.

Subsequently, RMJ and the State executed a compromise agreement, wherein the State agreed to pay RMJ $341,250 in total compensation. In its final judgment, which incorporates RMJ's summary judgments, the trial court concluded that, pursuant to the compromise agreement, the State is entitled to fee simple title in the real property and RMJ is entitled to the sum of $341,250 for the condemnation of the property and for damages to the remainder of the adjacent property.[5]

---

[5] Pursuant to the "undivided-fee rule," when real property has been "carved into different interests, the property is valued for condemnation purposes as if it were owned by a single party." *State v. Cent. Expressway Sign Assoc's*, 302 S.W.3d 866, 873 (Tex. 2009). "The purpose of the rule is to award full compensation for the land itself, and not for the sum of the different parts." *Id.* The fact-finder first determines the market value of the entire property, then apportions the market value between the fee owner and the lessee. *Id.* A condemnor has no interest in

## Standard of Review

After an adequate time for discovery, the party without the burden of proof may move for summary judgment, with or without presenting evidence, on the basis that there is no evidence to support an essential element of the non-moving party's claim. TEX. R. CIV. P. 166a(i); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002). The movant must specifically state the element as to which there is no evidence. TEX. R. CIV. P. 166a(i). The burden then shifts to the non-movant to produce evidence that raises a fact issue on the challenged element. *See Johnson*, 73 S.W.3d at 207.

To defeat a no-evidence motion, "the respondent is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." TEX. R. CIV. P. 166a(i) cmt. "A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). When determining if more than a scintilla of evidence has been

---

the apportionment of condemnation damages. *Texas Pig Stands, Inc. v. Krueger*, 441 S.W.2d 940, 945 (Tex. Civ. App.—San Antonio 1969, writ ref'd n.r.e.). Here, the State has filed a letter of nonparticipation in the appeal.

produced, the evidence must be viewed in the light most favorable to the non-movant. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). More than a scintilla exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id*. Conversely, "[w]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Id*.

### Apportionment of the Condemnation Proceeds

In his third issue, Smirl argues that the trial court erred in granting RMJ summary judgment on the ground that there is no evidence to support his claim for apportionment of the condemnation proceeds because his affidavit constitutes "more than sufficient evidence [of] the fair market value of the remaining lease."[6]

It is well-settled that a lessee is entitled, as a matter of law, to share in a condemnation award when part of its leasehold interest is lost by condemnation. *Motiva Enters., L.L.C. v. McCrabb*, 248 S.W.3d 211, 214 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see also Texaco Ref. & Mktg., Inc. v. Crown Plaza Grp.*, 845 S.W.2d 340, 342 (Tex. App.—Houston [1st Dist.] 1992, no writ). Both the fee owner and lessee are entitled to share in the award according to their

---

[6] By his petition in intervention, Smirl sought damages for his lost leasehold interest, lost personal property, and uncompensated moving expenses. On appeal, however, his argument concerns only his lost leasehold interest.

respective interests. *Texaco Ref. & Mktg., Inc.*, 845 S.W.2d at 342. Unless a lease provides that it terminates upon condemnation, the tenant will recover compensation for the unexpired term. *Motiva Enters., L.L.C.*, 248 S.W.3d at 214.

A lessee has the burden to establish prima facie proof of its ownership interest in the subject property and the value of that interest. *Soc'y of Mary's Stars*, *Inc. v. State*, 748 S.W.2d 320, 323 (Tex. App.—Fort Worth 1988, writ denied). A lessee is "entitled to receive compensation for the difference, if any, between the market rental and the contract rental for the balance" of the term. *Texas Pig Stands, Inc. v. Krueger*, 441 S.W.2d 940, 945 (Tex. Civ. App.—San Antonio 1969, writ ref'd n.r.e.).

Here, the lease does not state that it terminates upon condemnation. *See Texaco Ref. & Mktg., Inc.*, 845 S.W.2d at 342. Further, nothing in the lease reflects that Smirl waived his right to compensation. *See id.* Thus, Smirl is entitled to a portion of the condemnation award from RMJ for the value of his interest, if any. *See Motiva Enters., L.L.C.*, 248 S.W.3d at 214.

Smirl argues on appeal, as he did in the trial court, that his affidavit testimony, quoted above, constitutes "more than sufficient evidence that the fair market value of the remaining lease was approximately $576,000" and "that the fair market rent for a comparable lease was approximately $8,000 based on market research."

RMJ argues that Smirl's testimony "amounted to no evidence of damages for the loss of Smirl's claimed leasehold interest" because his "testimony failed to show how he was qualified or competent to determine market value issues such as fair market monthly rent." It also argues that "Smirl's testimony was conclusory" because he "failed to set forth any facts that would support the statements made" in that he failed to include or describe any of the referenced "market research" on which his conclusion of either the fair market value of the lease or of the fair market value of the remaining lease term was based. Rather, "Smirl simply concluded a market rent of $8,000 per month."

Even if we were to assume without deciding that Smirl was qualified to testify as the owner of the leasehold, we conclude that his affidavit testimony is conclusory and speculative, and, therefore, constitutes no evidence of the valuation of his leasehold interest.

Because property-owner testimony is the functional equivalent of expert testimony, it is judged by the same standards. *Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 157 (Tex. 2012). As with expert testimony, property valuations may not be based solely on a property owner's ipse dixit. *Id.* at 159. "The valuation must be substantiated; a naked assertion of 'market value' is not enough." *Id.* The property owner "must provide *the factual basis* on which his opinion rests." *Id.* (emphasis added). Evidence of comparable leasehold values,

11

appraisals, online resources, and any other relevant factors may be offered to support the claim. *See id.*; *Texas Fruit Palace, Inc. v. City of Palestine*, 842 S.W.2d 319, 323 (Tex. App.—Tyler 1992, writ denied) ("The measure of value of a leasehold estate is the value of the use and occupancy of the leasehold for the remainder of the tenant's term, less the agreed rent; the values are determined by the usual willing buyer, willing seller rule."). The owner's testimony may be challenged on cross-examination or refuted with independent evidence. *Justiss*, 397 S.W.3d at 159. However, "even if unchallenged, the testimony must support a verdict, and conclusory or speculative statements do not." *Id.* An expert's testimony is conclusory as a matter of law if he "simply state[s] a conclusion without any explanation." *Id.* at 156 (citing *Arkoma Basin Exploration Co. v. FMF Assocs. 1990–A, Ltd.*, 249 S.W.3d 380, 389 (Tex. 2008)). Testimony is speculative if it is based on guesswork or conjecture. *Id.*

In *Justiss*, the court held that because the landowners did not provide any factual bases for their valuations, their testimony was conclusory and, therefore, constituted no evidence. *Id.* at 159–61. Although one property owner demonstrated his familiarity with area market values, he failed to explain the factual basis behind his determination that his property suffered a $400,000 decrease in value. *Id.* at 161. His bare statement that it was "based on property sales around in the area" was insufficient. *Id.*; *cf. Arkoma*, 249 S.W.3d at 389

(holding that expert's "cursory" testimony did not make his opinion conclusory, because accompanying exhibit explained the basis for his conclusion).

Here, Smirl testified that "*[b]ased on market research*, the fair market value of the remaining lease term is *approximately* $576,000" and "[t]he fair market monthly rent for a comparable lease is *approximately* $8,000." (Emphasis added.) Thus, he made the bare assertion that his valuation was based on "market research" and did not offer any factual bases or evidence of nearby valuations, appraisals, online resources, and any other relevant factors to support his claim. *See id*. at 159, 161. As such, his valuation is conclusory. *See id.* at 161. Further, Smirl couched his valuations in terms of approximations. An opinion cast in terms of approximations and unsupported by any relevant facts leading to or supporting such approximation is conjectural. *Stinson v. Cravens, Dargan & Co.*, 579 S.W.2d 298, 299 (Tex. Civ. App.—Dallas 1979, no writ); *see also Justiss*, 397 S.W.3d at 158–59 (citing *Trinity River Estates, L.P. v. DiFonzo*, No. 2–08–393–CV, 2009 WL 1506928, at *4 (Tex. App.—Fort Worth May 28, 2009, no pet.) (mem. op.) (affirming no-evidence summary judgment where owner's affidavit, stating his property had been damaged "between $1.8 and $2.2 million dollars based upon the reduction in value of the overall site," failed to state basis for opinion)).

Smirl argues that RMJ failed to object in the trial court to the sufficiency of his affidavit testimony. There is a distinction between challenges to an expert's

scientific methodology and "no evidence challenges where, on the face of the record, the evidence lacked probative value." *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004). When an expert's underlying methodology is challenged, the trial court "necessarily looks beyond what the expert said" to evaluate the reliability of the expert's opinion. *Id.* Thus, an objection is required so that the trial court can conduct the analysis. *Id.* When, as here, however, the testimony is challenged as conclusory or speculative, and, therefore, as non-probative on its face, there is no need to go beyond the face of the record to test its reliability, and a party may challenge the legal sufficiency of the evidence even in the absence of an objection to its admissibility. *Id.* at 232–33.

We conclude that Smirl did not meet his burden to bring forward more than a scintilla of probative evidence to raise a genuine issue of material fact regarding the valuation of his leasehold interest. *See Justiss*, 397 S.W.3d at 158–59; *Chapman*, 118 S.W.3d at 751. Thus, we hold that the trial court did not err in granting RMJ summary judgment on the ground that Smirl produced no evidence "of the value of the use and occupancy of the leasehold for the remainder of the lease term."

Accordingly, we overrule Smirl's third issue.

Having upheld the trial court's ruling on no-evidence grounds, we need not address whether Smirl raised a genuine issue of material fact regarding the nature

of the tenancy supporting his valuation. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). Accordingly, we do not reach Smirl's first and second issues.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Justice Sharp, concurring in judgment only.